UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOAN OSSOWSKI, | Case No. 2:21-cv-01417-JCM-BNW |
| Plaintiff(s), | ORDER |
| v. | |
| ST, JOSEPH TRANSITIONAL REHABILITATION CENTER, LLC, | |
| Defendant(s). | |

Presently before the court is plaintiff Joan Ossowski[1] ("Ossowski") motion to remand, (ECF No. 7). Defendant St. Joseph Transitional Rehabilitation Center ("St. Joseph") filed a response, (ECF No. 10), to which Ossowski replied (ECF No. 12).

Also before the court is St. Joseph's motion to dismiss (ECF No. 8). Ossowski filed a response (ECF No. 9) to which St. Joseph Replied (ECF No. 11).

**I.  Background**

The instant action arises from a state law tort claims that St. Joseph was negligent in its medical care of Ossowski. (ECF No. 1-1). On June 21, 2021, Ossowski filed her complaint in Nevada state court. (*Id.* at ¶ 1). After being served on July 8, 2021, St. Joseph removed to this court on July 29, 2021. (ECF No. 1 at ¶ 3). Ossowski now moves to remand. (ECF No. 7).

---

[1] On September 28, 2021, attorneys for plaintiff Ossowski filed a Suggestion of Death Upon the Record (ECF No. 19) in compliance with Fed. R. Civ. P. 25 informing the court that Ms. Ossowski died on or about July 4, 2021. Ms. Ossowski's attorneys subsequently moved this court to substitute Kirby Ossowski as special administrator for the estate of Joan Ossowski, deceased, as plaintiff in place of Joan Ossowski (ECF No. 21). The court granted the motion on October 1, 2021 (ECF No. 22). The court now resumes its proceedings to rule on the present issue of remand.

**James C. Mahan**
**U.S. District Judge**

In the complaint, Ossowski alleged negligence relating to placement of a feeding tube and a StatLock, which caused gastrointestinal leaking requiring subsequent surgery. (ECF No. 1-1 at ¶¶ 9-10). Apparently[2], Ossowski made later claims relating to St. Joseph's failure to follow proper COVID-19 safety procedures and protocols which allegedly caused Ossowski to contract COVID-19 as a patient. (*See* ECF Nos. 1-1 at ¶ 14, 7 at 7, 10 at 2).

## II.     Legal Standard

### A.  Removal and Remand

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

Because the court's jurisdiction is limited by the constitution and 28 U.S.C. §§ 1331, 1332, "[t]he threshold requirement for removal under 28 U.S.C. § 1441 is a finding that the complaint contains a cause of action that is within the original jurisdiction of the district court." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (quoting *Toumajian v. Frailey,* 135 F.3d 648, 653 (9th Cir. 1998)). Thus, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

Upon notice of removability, a defendant has thirty days to remove a case to federal court once he knows or should have known that the case was removable. *Durham v. Lockheed Martin*

---

[2] The court is perplexed by the lack of any COVID-19 protocol nonfeasance claims in the original complaint attached to St. Joseph's petition for removal. (ECF No. 1-1). In fact, St. Joseph begins its petition for removal with the hollow citation to ¶¶ 20-23 of the "Compl. Attached hereto as Exhibit A" when discussing the purported COVID-19 claims, when in reality, the Ex. A. Compl. ends with ¶ 16. The court presumes this was an error and that there is a missing referential amended state complaint but since both parties concede that COVID protocol nonfeasance claims are at issue, the court proceeds with its analysis, particularly since it ultimately has no bearing on the court's final judgment.

James C. Mahan
U.S. District Judge

- 2 -

*Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(2)). Defendants are not charged with notice of removability "until they've received a paper that gives them enough information to remove." *Id.* at 1251.

Specifically, "the 'thirty day time period [for removal] . . . starts to run from defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction." *Id.* at 1250 (quoting *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 690–91 (9th Cir. 2005) (alterations in original)). "Otherwise, the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable." *Id*. (quoting 28 U.S.C. § 1446(b)(3)).

A plaintiff may challenge removal by timely filing a motion to remand. 28 U.S.C. § 1447(c). On a motion to remand, the removing defendant must overcome the "strong presumption against removal jurisdiction" and establish that removal is proper. *Hunter*, 582 F.3d at 1042 (quoting *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992) (per curiam)). Due to this strong presumption against removal jurisdiction, the court resolves all ambiguity in favor of remand to state court. *Id.*

### B. Preemption and Federal Question Jurisdiction

The "well-pleaded complaint rule" governs federal question jurisdiction. This rule provides that district courts can exercise jurisdiction under 28 U.S.C. § 1331 only when a federal question appears on the face of a well-pleaded complaint. *See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Thus, a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id*. Moreover, "an anticipated or actual federal defense generally does not qualify a case for removal[.]" *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).

The well-pleaded complaint rule, however, is not without exception. The "complete preemption doctrine" allows district courts to exercise federal question jurisdiction over state law claims when a federal statute completely preempts the relevant state law. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1107 (9th Cir. 2000) (citation omitted). Courts consider the factual allegations in the complaint and the petition of removal to determine whether

federal law completely preempts a state law claim. *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983).

Ordinary preemption is a defense and does not support Article III subject matter jurisdiction, a prerequisite for removal. *See Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986). In contrast, complete preemption is "really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin General Hosp. v. Modesto & Empire Traction Co*., 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund,* 538 F.3d 594, 596 (7th Cir. 2008) (internal quotations omitted). Complete preemption is "rare." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1056 (9th Cir. 2008).

Congressional intent is the "ultimate touchstone" of any preemption analysis, express or implied. *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96, 98 (1992). In determining Congressional intent to preempt, a court must "begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). "The first and most important step in construing a statute is the statutory language itself." *Royal Foods Co., Inc. v. RJR Holdings, Inc.*, 252 F.3d 1102, 1106 (9th Cir. 2001) (citing *Chevron USA v. Natural Res. Def. Council*, 467 U.S. 837, 842–44 (1984)).

## III. Discussion

### A. The PREP Act

The Public Readiness and Emergency Preparedness Act ("PREP") was enacted on December 30, 2005, as Public Law 109-148, Division C, Section 2. It amended the Public Health Service Act, adding sections that address liability immunity and a compensation program.[3] The PREP Act authorizes the Secretary of Health and Human Services ("HHS Secretary") to issue a Declaration to provide liability immunity to certain individuals and entities ("Covered Persons") against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture,

---

[3] These sections are codified at 42 U.S.C. §§ 247d-6d and 247d-6e.

distribution, administration, or use of medical countermeasures ("Covered Countermeasures"), except for claims involving "willful misconduct" as defined in the PREP Act. Under the PREP Act, a Declaration may be amended as circumstances warrant. 85 Fed. Reg. 21,012 (April 15, 2020). 42 U.S.C. § 247d-6d(b)(4). The primary thrust of the PREP act with respect to liability protections is as follows:

> Subject to the other provisions of this section, a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1).

### B. Covered Countermeasures and Federal Question

Ossowski's claims derive from state tort law and specify that St. Joseph was negligent in following proper safety protocols and procedures to isolate symptomatic COVID-19 patients, *inter alia*. (ECF No. 7 at 7). St. Joseph alleges that these proper safety protocols are Covered Countermeasures as provided by the PREP Act (ECF No. 10 at 7-8) and therefore valid federal subject matter jurisdiction.

A Covered Countermeasure is defined by statute as (A) "a qualified pandemic or epidemic **product**; (B) a **security countermeasure**; (C) a **drug**, **biological product**, or **device** that is authorized for emergency use in accordance with…the Federal Food, Drug, and Cosmetic Act; or (D) a **respiratory protective device** that is approved by the National Institute for Occupational Safety and Health…and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title." 42 U.S.C. § 247d-6d (emphasis added).

Isolation and social distancing measures are not Covered Countermeasures under a plain reading of the statute. Nor have any of the subsequent HHS Secretary Declarations or Amendments included these protocols as a Covered Countermeasure.[4] While it is true that the

---

[4] *See generally* Amendment to Declaration under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 21,012 (Apr. 15, 2020); Second Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 35,100 (June 8, 2020); Third Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical

1  Fourth Amendment added that Covered Countermeasures include *not* administering a
2  countermeasure, the necessary precondition of dealing in a Covered Countermeasure is still
3  required and is not present here. Even the most ambiguous of the above-listed Covered
4  Countermeasures—i.e. "security measures"—are defined in the statute (rather circularly) as a
5  "drug, biological product, or device." 42 U.S.C. § 247d-6b(c)(1)(B), which does not reasonably
6  equate to the practice of separating symptomatic COVID-19 patients from asymptomatic
7  patients.

8  St. Joseph avers that Ossowski is "attempt[ing] to use non-specific pleading in an attempt
9  to skirt the PREP Act." (ECF No. 10 at 8). The court disagrees. St. Joseph does not direct the
10 court to any clear statutory language or official declarations by the HHS Secretary to support its
11 contention that isolating symptomatic COVID-19 patients is a Covered Countermeasure under
12 the PREP Act. Instead, St. Joseph points the court to an Advisory Opinion issued by the HHS
13 Office of General Counsel from January 8, 2021. 85 Fed. Reg. 21-01 (January 8, 2021).

14 St. Joseph obfuscates the clear fact that the advisory opinion "does not have the force or
15 effect of law"[5] by plucking an obscure sentence in a prior HHS Secretary Amendment as
16 evidence of the advisory opinion's "controlling weight" here.[6] What St. Joseph conveniently fails
17 to convey is that the "incorporation" of advisory opinions mentioned in that amendment
18 *predated* the advisory opinion in question here—not to mention the potential *ultra vires*
19 ramifications of such an incorporation by HHS as an attempted end-run around the statutorily
20 designed, Congressionally-authorized agency powers vested in the HHS Secretary Declarations.

---

Countermeasures Against COVID-19, 85 Fed. Reg. 52,136 (Aug. 24, 2020); Fourth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 and Republication of the Declaration, 85 Fed. Reg. 79,190 (Dec. 9, 2020); Fifth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 7,872 (Feb. 2, 2021); Seventh Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 14,462 (Mar. 16, 2021); Eighth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 41,977 (Aug. 4, 2021); Ninth Amendment to the Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 86 Fed. Reg. 51,160 (Sept. 14, 2021).

[5] The HHS OGC itself writes this as the final sentence of its order, as it is required to do since the statute did not grant the agency authority for advisory opinions to enjoy the force or effect of law.

[6] *See* Amendment four, at 85 Fed. Reg. at 79192, 79194).

**James C. Mahan**
**U.S. District Judge**

Furthermore, St. Joseph is incorrect that this HHS Advisory Opinion enjoys *Chevron* deference.[7] On its reading of the statute—and as far as the court is aware—Congress has not delegated authority for the HHS to issue interpretations surrounding ambiguity of its own declarations as carrying the force of law. Therefore, the court is required only to defer to the "persuasiveness" of the agency's interpretation under *Skidmore*.[8] The court does not find the advisory opinion to be persuasive in resolving the instant issue—primarily because the opinion does not discuss the type of social distancing and isolation protocols at issue here and much of it is devoted to the implementation of PPEs, which could more reasonably be construed as "devices" potentially captured by a Covered Countermeasure. Here, the question concerns policies and procedures employed by the nursing facility, especially surrounding the separation of symptomatic COVID-19 patients.

Therefore, the court finds St. Joseph's arguments unavailing that the HHS General Counsel's Advisory Opinion 21-01 supports removal.

**C. Preemption**

Even assuming the PREP Act enjoys "complete preemption" status as a federal law,[9] it is immaterial since the court finds that the COVID-19 safety protocol of separating out patients who exhibit symptoms from the disease is *not* a Covered Countermeasure by a plain reading of the statute. And if there is any ambiguity, the court resolves in favor of remand on this point. *Gaus*, 980 F.2d at 566 (9th Cir.1992).

The *Grable* exception also does not apply since there are no significant federal issues implicated by a state law tort claim over negligence in safety precautions of a Nevada nursing facility to limit the spread of a viral disease.[10] Federal question jurisdiction does not "lie over"

---

[7] *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

[8] *U.S. v. Mead Corp.*, 533 U.S. 218 (2001) (*citing Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) to hold that "persuasiveness" is the only proper deference required for an agency interpretation (in *Mead*, a tariff classification via "customs ruling letter") **where there is "no indication that Congress intended such a ruling to carry the force of law."**

[9] The court does not comment on this point since it is unnecessary for the holding.

[10] *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

**James C. Mahan**
**U.S. District Judge**

- 7 -

these state law claims just because the PREP Act exists. *Id.* Without more, the court is left wanting for removal justification. A federal issue is neither "necessarily raised" nor "actually disputed" since there is a debatable federal issue at base here—i.e. whether patient separation techniques constitute a Covered Countermeasure. *Id.* Permitting removal in this case would disrupt the Congressionally desired federal-state balance for plaintiffs to enjoy unique state law causes of action for just such controversies. *Id.*

### D. Federal Officer Jurisdiction

St. Joseph does not rebut Ossowski's argument regarding lack of federal officer jurisdiction under 28 U.S.C. § 1441(a)(1), but this argument is equally unavailing. St. Joseph does not operate under "specific direction of a federal officer" by virtue of complying with federal law under the PREP Act. St. Joseph cherry picks authority again when citing to *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142 (2007). It is well established that *Watson* stands for the proposition that a private firm's compliance (or noncompliance) with federal laws and regulations does not by itself fall within the scope of the phrase "acting under" a federal "official." *Id* at 143. Otherwise, a "contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries." *Id.*

## IV. Conclusion

Accordingly, and pursuant to the foregoing,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Ossowski's motion to remand (ECF No. 7) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERD that St. Joseph's motion to dismiss (ECF No. 8) be, and the same hereby is, DENIED as moot.

DATED October 6, 2021.

_____
UNITED STATES DISTRICT JUDGE